Patrick M. Flatley
United States Bankruptcy Judge

Dated: Tuesday, October 22, 2013 4:05:19 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID C. BUTLER, | ) | Case No. 12-633 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| ANDREW BENNETT, as Administrator of | ) | |
| the Estate of Harold Hart Bennett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No.12-82 |
| | ) | |
| DAVID C. BUTLER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

The Plaintiff seeks to deny the Debtor's anticipated discharge under 11 U.S.C. § 727(a)(4)(A) based upon the Debtor's failure to include on his bankruptcy schedules an alleged interest in property located in Hampshire County, West Virginia (the "Property"). The Debtor asserts that the Plaintiff failed to prove every element of § 727(a)(4)(A) by a preponderance of the evidence.

For the reasons stated herein, the court will deny the relief sought in the complaint.

**I.  BACKGROUND**

Since 1965, the Debtor and his family have enjoyed the use of the Property. From 1965 to 1995, the Debtor's family, in conjunction with another family, leased the Property from the Herriott family pursuant to a number of consecutive written leases. According to the Debtor, the terms upon

1

which his family leased the Property permitted the building of a cabin thereon and required the lessees to insure and pay taxes upon the personalty located on the Property. Sometime in 1986 or 1987, the cabin was rebuilt after a flood destroyed the then-existing structure. The Debtor's parents spent approximately $16,000.00 to construct the cabin. In 1995, the lease for the Property was reexecuted between members of the Herriott family then having an interest therein and the Debtor and his wife; the lease called for annual rental payments of $250.00 for a term of ten years and expired on September 1, 2005. Since 2005, the Debtor and his family have continued to use the Property in the absence of any written agreement with the Herriott family. The Debtor has consistently attempted to obtain a written lease since 2005. The last communication he received from the Herriotts was in 2007 and led the Debtor to believe a lease would be forthcoming, but the Debtor never received a subsequent lease. Nonetheless, the Debtor continues to comply with terms of the prior lease. He pays rent to the Herriotts and maintains personal property insurance and pays personal property taxes on his personalty located on the Property. In 2004, the Debtor claimed the lease on the Property as an asset in conjunction with a home equity loan application and valued the lease at $30,000.00. In 2009, the Debtor claimed the lease as an asset on a personal financial statement and valued the lease at $70,000.00.

On April 30, 2012, the Debtor filed his Chapter 7 voluntary petition in this court. The Debtor omitted any interest in the Property from his bankruptcy schedules. The only real property interest disclosed on the Debtor's Schedule A is his primary residence located at 2535 Arden Nollville Road in Inwood, WV. The Debtor likewise did not list any leasehold interest in the Property on his Schedule G - Executory Contracts and Unexpired Leases. The Debtor listed only the Plaintiff's wrongful death claim, as representative of the estate of Harold Hart Bennett, on his schedule of unsecured creditors.[1] On September 19, 2012, the Chapter 7 trustee commenced the meeting of creditors as prescribed by 11 U.S.C. § 341(a). In addition to the trustee, counsel for the Plaintiff

---

[1] The Debtor scheduled the Plaintiff's claim as contingent, unliquidated, and disputed. On January 31, 2013, the court granted the Plaintiff relief from the automatic stay to pursue his wrongful death civil action against the Debtor in the Circuit Court of Berkeley County, WV ("State court"). The complaint arises from the death of Harold Hart Bennett who was shot and killed by the Debtor on October 24, 2009, while he and the Debtor were turkey hunting on the Property. As far as the court is aware, that litigation is still pending.

2

appeared and participated at the meeting of creditors. The Debtor first disclosed the Property to the trustee in response to a question posed to him at the meeting of creditors. The trustee and counsel for the Plaintiff each questioned the Debtor about the Property and his failure to list any interest therein on his bankruptcy schedules. According to the Debtor's testimony at his meeting of creditors, he left the Property off of his bankruptcy schedules because he did not believe he had any interest therein.

## II. DISCUSSION

The Plaintiff asserts that the Debtor's failure to schedule an interest in the Property is ground upon which the court should withhold the Debtor's anticipated discharge in this case because the Debtor's omission is a false statement, which he knowingly made with a fraudulent intent; counsel for the Plaintiff asserts that the Debtor would not have disclosed the Property had counsel not been present at the meeting of creditors. The Debtor asserts that his omission is not a false statement, and to the extent that it is, he did not make it knowingly or with a fraudulent intent.

The Bankruptcy Code provides that the court shall grant a discharge under Chapter 7 unless, among other things, the debtor knowingly and fraudulently made a false oath that is material to the bankruptcy estate. 11 U.S.C. § 727(a)(4)(A). The purpose of § 727(a)(4)(A) is to enforce a debtor's duty to provide reliable information to those with an interest in the administration of the bankruptcy estate. *See In re Stout*, 348 B.R. 61, 64 (Bankr. N.D.W. Va. 2006) (citation omitted). "The bankruptcy code favors discharge, and the exceptions to discharge are narrowly construed." *Id*. (citing *Wilson v. Key*, No. 97-1408, 1997 WL 770529, at *1 (4th Cir. 1997)(unpublished)). To deny a debtor discharge under this section, a plaintiff "must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement materially related to the bankruptcy case." *Sheehan v. Stout (In re Stout)*, 348 B.R. 61, 64 (Bankr. N.D.W. Va. 2006) (citing *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251-52 (4th Cir. 1987). In evaluating a claim under § 727(a)(4)(A), the court's determination of whether the debtor knowingly and fraudulently made a false statement is a question of fact. *See Mercantile Peninsula Bank v. Franch (In re French)*, 499 F.3d 345, 352 (4th Cir. 2007) (citation omitted). The court's determination concerning fraudulent intent depends "largely upon an assessment of the credibility

3

and demeanor of the debtor." *Id.* at 253.

To prevail under § 727(a)(4)(A), a plaintiff must prove the debtor's fraudulent intent "either through direct evidence or by pointing to specific facts . . . that, in the aggregate, demonstrate a pattern of reckless disregard for the truth sufficient to warrant an inference of fraudulent intent." *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 784 (Bankr. E.D. Va. 2012) (citation omitted). The court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent. *Id*. (citation omitted).

Here, the Plaintiff has not proven by a preponderance of the evidence each factor necessary to deny the Debtor a discharge under § 727(a)(4)(A).[2] The Debtor, whom the court finds credible and forthright, concedes the first and fifth factors; the Plaintiff, however, failed to prove that the Debtor knowingly made the allegedly false statement and that such was made with a fraudulent intent.[3]

Even assuming that the Debtor possesses an interest in the Property, the Plaintiff failed to prove by a preponderance of the evidence that the Debtor knew he had such an interest and was motivated by a fraudulent intent when he omitted it from his bankruptcy schedules. In an attempt to prove that the Debtor knew he had an interest in the Property, the Plaintiff focused primarily on the Debtor's prior claims of ownership of the Property and his continued payment of rent, personal property taxes, and insurance. According to the Plaintiff, that conduct evidences the Debtor's knowledge, or at least belief, that he had some interest in the Property. The Debtor, however, testified at trial that he included the lease as an asset in 2004 because the lease did not expire until the following September. Similarly, according to the Debtor's testimony, he again claimed the lease

---

[2] The record is unclear with respect to precisely what interest the Plaintiff believes the Debtor should have listed on his schedules. The Plaintiff's amended complaint alleges that the Debtor failed to list his alleged ownership interest in the Property on Schedule A. The evidence at trial revolved around an allegation that the Debtor failed to schedule a leasehold interest in the Property on his Schedule H. The court finds no reason to clarify the record, however, because this issue is not dispositive.

[3] Because the court finds that the Plaintiff failed to carry his burden of proof regarding the third and fourth factors to be considered, the court makes no findings regarding the second factor — whether the statement made was false.

4

to be an asset in 2009 because he expected to receive a written renewal of the lease; in 2007, he received correspondence from a member of the Herriott family that led him to believe a written renewal of the lease would be forthcoming. As of the petition date in 2012, however, the 2007 communication was the last received by the Debtor. Based upon the lack of communication from the Herriott family, the Debtor resigned himself to the fact that a written lease was unlikely, and he believes his continued use of the Property is insecure although there is no indication on the record that the Debtor or any member of his family has been denied access to the Property. Nonetheless, the Debtor is hopeful that he and his family will be able to continue to use and enjoy the Property into the future. In that regard, the court finds that the Debtor's continued payment of rent, personal property taxes, and insurance on the Property is not necessarily evidence of his knowledge of an interest in the Property but merely evidence of his desire to protect his family's continued use of the Property, whether or not that interest continues to be viable. The Debtor and his family presumably have personalty on the Property that requires the payment of taxes and insurance irrespective of any lease obligations regarding the same.

       The court similarly finds that the Plaintiff failed to prove by a preponderance of the evidence that the Debtor acted with a fraudulent intent when he omitted the Property from his bankruptcy schedules. As the court noted, it finds the Debtor's testimony to be credible. In that regard, the court finds the Debtor's explanation of why he omitted the Property from his bankruptcy schedules to be reasonable and void of any fraudulent intent. The Debtor's written lease of the Property expired in 2005. Less than two years later, the Debtor received a letter from Charles B. Herriott. Based upon the letter, the Debtor believed that a new lease from the Herriotts would be forthcoming. The Debtor never received a new lease from the Herriotts, and the 2007 letter was the last communication from the Herriott family ever received by the Debtor. The Debtor thus reasonably believed, albeit maybe mistakenly, that he did not have an interest in the Property as of the petition date in this case. Nonetheless, the Debtor volunteered information regarding the Property to the trustee at his meeting of creditors. Based upon the Debtor's belief that he does not possess an interest in the Property, his subsequent disclosure was not made in an effort to "come clean" but was made to explain why the Property was not scheduled. The court finds that the Debtor's disclosure at the meeting of creditors mitigates any potential finding of fraudulent intent.

Additionally, a discharge of the Plaintiff's debt is the only material purpose of the Debtor's Chapter 7 case; the Debtor indicated an intent to reaffirm his secured debt obligations, and the Plaintiff is the only unsecured creditor scheduled by the Debtor. In that regard, the Plaintiff is intimately familiar with the Property as it is the location around which the State court litigation is focused. The Debtor testified that he would not risk his Chapter 7 discharge by omitting the Property from his schedules when the lone debt to be discharged arises from the State court litigation and is held by the Plaintiff. Because the court finds the Debtor to be credible and forthright, the Debtor's omission of the Property, to the extent it should have been scheduled, is more likely than not the result of a mistake or poor judgment rather than a fraudulent intent.

### III. CONCLUSION

Based on the foregoing, the court finds that the Plaintiff failed to prove by a preponderance of the evidence that the Debtor knowingly made the allegedly false statement with a fraudulent intent. In sum, to the extent that the Debtor's omission of the Property from his bankruptcy schedules is a false statement, the Debtor did not make it knowingly because he believed, rightly or wrongly, that he did not have such an interest. And his explanation regarding his lack of communication with the Herriott family, his subsequent disclosure of the Property at his meeting of creditors, and the fact that the Plaintiff is the only creditor subject to discharge in this case preclude a finding of fraudulent intent.

Pursuant to Fed. R. Bankr. P. 7058, the court will enter a separate order dismissing this proceeding.